No. 12,542.

Ross et al. *v.* City and County of Denver.
(2 P. [2d] 241)

Decided June 22, 1931. Rehearing denied August 10, 1931.

Messrs, GRANT, ELLIS, SHAFROTH & TOLL, Mr. WARWICK M. DOWNING, Mr. RICHARD DOWNING, Mr. STANLEY H. JOHNSON, for plaintiffs in error.

Mr. THOMAS H. GIBSON, Mr. CHARLES H. HAINES, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

FREDERICK R. ROSS, together with numerous other landowners in the Park Hill Storm Sewer District, in the City and County of Denver, plaintiffs in error, will hereinafter be referred to as plaintiffs, while the City and County of Denver, Colorado, a municipal corporation, and its various officers charged by the city charter with duties respecting special assessments and the collection thereof, defendants in error, will hereinafter be referred to as defendants. This is an action to enjoin further proceedings in the matter of the establishment and creation of a storm sewer district. A general demurrer was sustained to plaintiffs' petition as amended, upon which plaintiffs elected to stand, whereupon the court dismissed the action with prejudice, and rendered judgment in favor of the defendants for costs. The plaintiffs prosecute this writ to review the action of the court in sustaining the demurrer and rendering its judgment.

The petition alleges that plaintiffs are the owners of more than 6,500 lots in the proposed Park Hill Storm

Sewer District, and their property is directly affected by special assessments proposed to be levied in connection therewith; it alleges the corporate existence of the defendant city and county, and specifies the various officers and boards thereof having duties with reference to the levy and collection of special assessments. It further alleges that on May 9, 1929, the manager of improvements and parks caused to be published a notice of the proposed establishment and creation of the sewer district, which comprised an area of approximately fourteen square miles, and embraced within its limits 51,295 lots, each of which was 25 feet wide by 125 feet in length. The published notice also apprised those interested that written complaints and objections to the proposed sewer district would be heard by the manager of improvements and parks on July 9, 1929, and, accordingly, the complaints and objections of plaintiffs were regularly filed in his office on July 8, 1929. The written complaints and objections of plaintiffs were overruled because, the complaint alleges, the said manager stated at the time and place of the hearing thereon that he had been advised by the city attorney that he must, in fixing and determining special assessments, be governed by the area rule of assessments, and that although he fully realized that the result would be unfair and confiscatory to plaintiffs and other landowners, he had no alternative except to follow the city attorney's advice in the matter, and thereupon refused to discuss or consider the matter further. The petition alleges that the said manager recommended to the city council for its approval an ordinance establishing and creating the Park Hill Storm Sewer District, and that before acting thereon, the city council requested the advice and opinion of the city attorney, and were thereupon advised that the council must either approve or reject the proposed ordinance submitted by the manager of improvements and parks, and that it had no authority to amend the same, and that the method of assessing in the proposed ordinance, i. e., the area basis,

was the only method which could legally be adopted and approved by it, and was authorized and made compulsory by the provisions of the city charter, and thereupon the city council adopted and passed the ordinance creating and establishing the sewer district. It is also alleged that the city attorney likewise counselled and advised the mayor, who thereupon signed and approved the storm sewer ordinance. The petition alleges that the storm sewer district is divided in subdistricts 1, 2 and 3, and that the special assessments, as provided in the ordinance, will be $40.50 per regular lot, with certain allowances, in subdistrict 1, while in subdistricts 2 and 3 the special assessments will amount to $18.50 per regular lot. It is further alleged that many of their lots will receive no benefit whatever by reason of the construction of the storm sewer, while all of their property is to be assessed an amount greatly exceeding any benefit which is or may be reasonably anticipated as a result of the improvement; that the special assessment, so far as these plaintiffs are concerned, in some instances exceeds the value of their property, and will exceed the value thereof after the special improvement is completed; that it will not enhance the value of their property to an amount equal to one-fourth of the special assessment, while as to some of their property, there is no present benefit, but any benefit which may possibly accrue will be remote, conjectural, speculative, uncertain and prospective. However, in such instances as plaintiffs' property is benefited to any extent, they offer to pay the amount thereof when the same is determined. It is further alleged that the area basis, as applied in this case, will be confiscatory, unequal, unjust, arbitrary, and will be unconstitutional and void because it will deprive plaintiffs of their property without due process of law, and will result in taking plaintiffs' property without just compensation. The plaintiffs further allege the cost of the proposed improvement to be approximately $1,600,000, and that they have no complete or adequate remedy at law in the prem-

ises. They seek an injunction restraining defendants from further proceeding under the proposed ordinance.

Section 20 of the charter of the City and County of Denver, 1927 compilation, authorizes the city and county to contract for and make local improvements, and *"to assess the cost thereof wholly or in part upon the property especially benefited, as hereinafter provided."* Section 21 thereof provides that the improvement shall be authorized by ordinance, which ordinance "shall be in the form recommended by the board [manager of improvements and parks] by endorsement thereon, and shall not be subject to amendment by the council." Section 63 thereof provides that "In ordering the construction of sewers, the board [manager of improvements and parks] shall proceed as required in the first, second and sixth provisos of section 272 hereof, but the construction of such sewers shall not be subject to petition or remonstrance." In section 22 thereof, under proviso one, before ordering special improvements, the manager of improvements and parks shall adopt full plans and specifications; determine the time and manner of payment of the cost; the lands to be included in the improvement district; shall cause an estimate of the cost to be made, and an apportionment thereof upon each piece of real estate, and further provides that the contract for the construction of the improvement shall not exceed the estimate therefor. Under the second proviso, he shall give notice to all owners of real estate in the proposed improvement district, and others interested, by an advertisement as provided therein, which advertisement shall contain detailed information of the proposed improvement; the cost thereof; the manner and time of payment therefor, and the cost apportioned to each piece of real estate on the area basis, as provided in section 60, to which reference will hereinafter be made, and in the advertisement, all owners or others interested shall be notified that at a time and place the manager of improvements and parks will hear all complaints and objections

to the proposed improvement that may be made in writing concerning the same, and advising that the plans and specifications concerning the proposed improvement are on file in his office for inspection. Under the sixth proviso, the proposed plans and specifications may be modified, confirmed or rescinded by the manager of improvements and parks, at any time prior to the passage of the ordinance authorizing the same, ''Provided, that no substantial change in the district, map, details, specifications or estimate shall be made by the board [manager of improvements and parks] after the first publication of the notice to property owners.'' Section 60 provides that, ''The cost of district sewers shall be assessed upon all the real estate in the district, in proportion as the area of each piece of real estate in the district is to the area of all of the real estate in the district, exclusive of public highways, and the cost of subdistrict laterals shall be assessed in like manner upon all the real estate in the subdistrict; * * *'' Section 50 provides that, ''No action or proceeding, at law or in equity, to review any acts or proceedings, or to question the validity or enjoin the performance of any act, * * * authorized by this article, or for any other relief against any acts or proceedings done or had under this article, * * * whether based upon irregularities or jurisdictional defects, shall be maintained, unless commenced within ninety days after the performance of the act or the passage of the resolution or ordinance complained of, or else be thereafter perpetually barred.''

The question of the prematurity of this action is raised, and in this connection it is said that section 32 of the charter provides that all written complaints and objections to the assessments as specified in the published notice of the clerk to all owners and other persons interested shall be heard and determined by the city council, sitting as a board of equalization, and that this board of equalization may either confirm the apportionment, or make such changes as are equitable and just. In the in-

stant case, the city council, upon the advice of the city attorney, disclaimed any right, power or authority to recognize special benefits as a limitation upon assessments on the area basis, and it cannot be assumed that its attitude upon legal questions will change; the presumption is that the city council will proceed with the proposed improvement. Moreover, under the provisions of section 50, supra, unless this action is now timely and appropriate, that section, a 90-day statute of limitations, if valid, will intervene, and the right of plaintiffs to maintain any court action will be forever lost. The passage of the ordinance establishing and creating this special improvement district, and fixing and determining the apportionment of the cost and limits and boundaries of the improvement district is sufficient to entitle the plaintiffs to maintain this action, and it was not prematurely commenced. Under the statutes, a similar announcement was made in *Ellis v. La Salle,* 72 Colo. 244, 247, 211 Pac. 104; *Deter v. Delta,* 73 Colo. 589, 591, et seq., 217 Pac. 67.

In *Santa Fe Land Improvement Co. v. the City and County of Denver, Colorado,* 89 Colo. 309, 2 P. (2d) 237, a case recently determined by this court and not yet officially reported, we held adversely to the city and county on its contention as to the sufficiency of the hearing and the legality of the basis of assessment, and determined that the failure to grant the plaintiffs in that case a full hearing before a body clothed with sufficient power to grant the proper relief did not satisfy the due process of law provision of the Constitution, and that the assessment for local improvements apportioned on the area basis in so far as it exceeded the benefits was violative of the constitutional provision against the taking of private property without just compensation. The Santa Fe case, supra, with respect to all other contentions herein, is decisive and controlling, and must be read in connection herewith.

The judgment is reversed and the cause remanded with directions to the district court to set aside its judg-

324

ment, overrule the defendants' demurrer to plaintiffs' petition, and to proceed with the final determination of the cause.

Judgment reversed.